Welch, J.
This matter arises on the motion of the plaintiff, National Employment Service Corporation (NESC), for an order to compel the defendant, Liberty Mutual Insurance Company (Liberty Mutual), to produce documents. The underlying complaint alleges breach of contract and unfair business practices by Liberty Mutual. The plaintiff seeks specifically the production of thirty-two electronic mail (e-mail) communications to which Thomas Hiers, Esq. (Hiers), Liberty Mutual’s corporate counsel at the germane times, was a party. The defendant opposes the motion on the grounds that it has already produced all requested and nonprivileged materials and that the thirty-two e-mail communications are non-discoverable materials under the attorney-client privilege.
For the following reasons, the plaintiffs request for an order compelling production of documents is DENIED.
DISCUSSION
1. Attorney-Client Privilege
Where a person, as a client or prospective client, consults a member of the bar in his capacity as such, the communication in confidence of matters that are or that the client reasonably supposes to be necessary to the proper conduct of legal business is privileged at the option of the client. See Foster v. Hall, 29 Mass. 89 (1831); Pannell v. Rosa, 228 Mass. 594, 596 (1917). It is not necessary that a fee be paid by the client or that the attorney be actually retained for the privilege to attach. Foster v. Hall, 29 Mass, at 93. To the contrary, the privilege “may extend to preliminary communications looking toward representation even if representation is never undertaken.” Commonwealth v. O’Brien, 377 Mass. 772, 775-76 (1979). Included within the meaning of “client” is an agent or employee of a client, and thus the privilege may extend to communications from an agent or employee to the attorney. Ellingsgard v. Silver, 352 Mass. 34 (1967).
Massachusetts law recognizes that “the attorney-client privilege may extend to communications from the client’s agent or employee to the attorney,” Ellingsgard v. Silver, 352 Mass. 34, 40 (1967), but the parties have cited and this Court can find no Massachusetts case that addresses the issue of whether the attorney-client privilege may apply to communications between a corporation’s counsel and its employees.
The Supreme Judicial Court has, however, demonstrated its willingness to follow federal precedent concerning the nature of the attorney-client privilege by its approving reliance upon and citation of the leading United States Supreme Court case in the area of the corporate attorney-client privilege, Upjohn Co. v. United States, 449 U.S. 383 (1981). See Commonwealth v. Goldman, 395 Mass. 495, 502, cert. denied, 474 U.S. 906 (1985). Accordingly, in an absence of Massachusetts precedent, this Court will follow the Supreme Court’s interpretation of the attorney-client privilege in Upjohn Co. v. United States, supra.
In Upjohn, the Supreme Court ruled that the attorney-client privilege, in the corporate context, extends beyond communications between the corporate attorney and the corporation’s “control group” to include communications made by a corporation’s employees to its attorney acting at the direction of corporate superiors to secure legal advice if (1) such communications were within the employees’ corporate duties, (2) the employees were sufficiently aware that the information was sought from them in order to obtain legal advice, and (3) the communications were considered confidential when made and were thereafter kept confidential by the corporation. Upjohn, 449 U.S. at 383.
*222 The Court commented that, “middle level and indeed lower level employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by the corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.” Id. at 391.
The Upjohn Court stressed that the attorney-client privilege exists to protect not only the giving of advice by an attorney to his client but also exists to protect the giving of information to the lawyer to enable him to give sound and informed legal advice. Id. at 390. The focus of Upjohn, therefore, is on whether the application of the privilege in the circumstances of a particular case fosters the flow of information to corporate counsel regarding issues about which corporations seek legal advice.[1]
At issue in this case are communications between lower and middle-level corporate employees and the corporation’s in-house attorney. The plaintiff claims that these communications are discoverable and non-privileged because (1) the in-house counsel’s participation concerned “business” subject matter, rather than legal matters; (2) the in-house counsel was a part of the unfair practices alleged by plaintiff; and (3) the information was circulated to third parties outside the scope of the attorney-client relationship. Because the plaintiff has failed to produce any evidence that the e-mail was disclosed to third parties (which would then destroy the privilege, see Drew v. Drew, 250 Mass. 41, 44-45 (1924)), the Court will consider only whether the e-mail is within the scope of the attorney-client privilege.
The plaintiff contends that the thirty-two e-mail communications sought for production involve communications of the in-house counsel in his role as business advisor to the corporation and not as an attorney. Communications from, as well as communications to, the corporate attorney can also fall under the protection of the attorney-client privilege, but only in situations where legal and not technical or business advice is at issue. Upjohn at 390. The issue, therefore, is whether Liberty Mutual’s corporate counsel was acting in his legal capacity, or merely as a business advisor, when he communicated with the defendant’s employees.
“One factor which must be evaluated in order to determine whether an attorney communicated in his professional capacity as a lawyer is whether the task could have been readily performed by a nonlawyer — as when facts are gathered for business decisions. A related factor is whether the function that the attorney is performing is a lawyer-related task such as: applying law to a set of facts; reviewing client conduct based upon the effective laws or regulations; or advising the client about status or trends in the law... Thus, there is a distinction between a conference with counsel, and a business conference at which counsel was present. Documents which do not ordinarily qualify for the privilege are: business correspondence; interoffice reports; file memoranda; and minutes of business meetings.” Oil Chemical & Atomic Workers Int’l Union v. American Home Products, 790 F.Supp. 39, 41 (D.Puerto Rico 1992) (citations omitted).
After in camera inspection of the thirty-two e-mail communications that are the subject of this motion, the court concludes that they are materials subject to the attorney-client privilege and are not discoverable. The relevant e-mail communications were sent from or to employees of the client corporation, Liberty Mutual, and were sent from or to Liberty Mutual’s in-house counsel for legal purposes, either seeking legal advice or in anticipation of litigation. No indicia of the corporate counsel acting in a business function is contained in the materials. The materials therefore are protected by the attorney-client privilege.
2. Work Product
The e-mail communications are also not discoverable under the work product doctrine. Generally, discovery is permissible of an nonprivileged material which is relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence. Mass.R.Civ.P. 26(b)(1). Materials which are prepared in anticipation of litigation and are otherwise discoverable under Rule 26(b)(1) may be only discovered on a showing of substantial need by the party seeking the documents and of that party’s inability to obtain the substantial equivalent of the information elsewhere without undue hardship. Mass.R.Civ.P. 26(b)(3). Thus, the principal difference between the attorney-client privilege and the work product doctrine, in terms of protections each provides, is that the privilege cannot be overcome by a showing of need, whereas a showing of need may justify discovery of an attorney’s work product. If the required showing is made under Rule 26(b)(3), the ensuing order to compel production must protect against disclosure of the “mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.” Id.
The thirty-two e-mail communications, as discussed above, are privileged material and thus beyond the scope of Rule 26(b)(1). Furthermore, the communications also consist of “opinion” work product, i.e., material containing the mental impressions, conclusions, opinions, or legal theories of the attorney or other representative or party and are not discoverable. HullMunicip. Lighting Plant v. Massachusetts Municip. Wholesale Elec. Co., 414 Mass. 609, 615 (1993). Opinion work product, unlike “ordinary” work product, is not discoverable. Id.
ORDER
For the foregoing reasons, the plaintiffs motion to compel the production of documents is DENIED.

The purpose of the attorney-client privilege is “to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer being fully informed by the client.” Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).