Gershengorn, J.
Plaintiff in this employment discrimination suit, Dr. Francisco S. Pardo (“Pardo”), seeks disclosure of the comparative promotional files for other candidates considered for academic positions by one of the defendants in this case, Harvard Medical School (“Harvard”). Massachusetts General Hospital (“the Hospital”), the hospital at which plaintiff formerly practiced and another defendant here, has objected to disclosure of these records, claiming that they are protected by the peer review privilege contained in G.L.c. Ill, §§204-05 (1996 & Supp. 2000). For the following reasons, the court ALLOWS Pardo’s motion to compel.
*460 DISCUSSION
The task for the court Is to interpret the meaning of certain language recently inserted into G.L.c. Ill, §205(b). Section 205(b) states,
Information and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees, including incident reports required to be furnished to the board of registration in medicine or any information collected or compiled by a physician credentialing verification service operated by a society or organization of medical professionals for the purpose of providing credentialing information to health care entities shall be deemed to be proceedings, report, or records of a medical peer review committee for purposes of [G.L.c. Ill, §204], and may be so designated by the patient care assessment coordinator; provided, however, that such information and records so designated by the patient care assessment coordinator may be inspected, maintained, and utilized by the board of registration in medicine, including but not limited to its data repository and disciplinary unit. Such information and records inspected, maintained or utilized by the board of registration in medicine shall remain confidential, and subject to subpoena, discovery or introduction into evidence, consistent with [§204]; however, such records may not remain confidential if disclosed in an adjudicatory proceeding of the board of registration in medicine, but the information and records shall be otherwise subject to the protections offered by [§204]. In no event, however, shall records of treatment maintained pursuant to [G.L.c. Ill, §70], or incident reports or records or information which are not necessary to comply with risk management and quality assurance programs established by the board of registration in medicine be deemed to be proceedings, reports or records of a medical peer review committee under this section; nor shall any person be prevented by the provisions of this section from testifying as to matters known by such person independent of risk management and quality assurance programs established by the board of registration in medicine.
The disputed language relevant here is the phrase “any information collected or compiled by a physician credentialing verification service operated by a society or organization of medical professionals for the purpose of providing credentialing information to health care entities,” contained in the first sentence of Section 205(b), just before the operative verb. G.L.c. Ill, §205(b). Generally, this phrase defines one class of “proceedings, reports and records of a medical peer review committee” protected by this strong statutory privilege. G.L.c. Ill, §§204-05. The Supreme Judicial Court has recently clarified the meaning of other language in section 205(b) in Carr v. Howard, New England Deaconess Hospital Corp., 426 Mass. 514, 521-26 (1998), but this new, so-called “credentialing language” was not at issue, having only been added to the statute in 1996. See 1996, c. 348, §2.
In Carr, 426 Mass. at 521 (emphasis in original), the Supreme Judicial Court noted that G.L.c. Ill, §205(b) “supplements §204(a) by statutorily designating certain 'information and records’ not obviously ‘of a medical peer review committee’ (under the language of §204[a]) as ‘proceedings, reports or records’ for the purposes of §204(a).” The Court made this statement on its way to holding that this statutory privilege protected from disclosure certain incident reports regarding a mental health patient, sought through discovery in a wrongful death suit against the hospital and that patient’s estate. See Carr, 426 Mass. at 532. The Court also held that in-camera review of specific documents was not an appropriate method for determining the applicability of the medical peer review privilege in that case. See id. at 528-32. The documents at issue in Carr, though, were incident reports concerning a patient-documents clearly “necessary to comply with risk management and quality assurance programs established by the board of registration in medicine [hereinafter ‘the Board’] and which are necessary to the work product of medical peer review committees,” as stated in the terms of section 205(b).
Here, the Hospital argues that Harvard’s promotional records for other candidates for academic positions are also documents which are “necessary to comply with risk management and quality assurance programs . . . and which are necessary to the work product of medical peer review committees!,]” in the same fashion as these incident reports. G.L.c. Ill, §205(b). The court disagrees with this notion. At the outset, an initial, bare reading of this new “credentialing language,” does not permit the Hospital’s interpretation. The first clause of section 205(b) at issue here, “any information collected or compiled by a physician credentialing verification service operated by a society or organization of medical professionals” is plainly modified by the second clause of the recent amendment. Thus, to be privileged, credentialing materials must also be “collected or compiled ... for the purpose of providing credentialing information to health care entities.” G.L.c. Ill, §205(b) (emphasis added). As revealed by Harvard’s handbook on its hiring process, however, the University does not assemble these promotional files to provide information to hospitals; rather, it assembles them for its own purpose, which is to ensure that Harvard promotes and hires only what it considers the best faculty. Moreover, the University is not a statutorily defined “health care entity.” G.L.c. Ill, §205(a). Unlike the Hospital in this case, Harvard is not “required to participate in risk management and quality assurance programs established by the board of registration in medicine.” Id. Accepting *461 Harvard’s hiring process as necessary to comply with regulation by the Board of Registration in Medicine would stretch the peer review committee process and privilege beyond that intended by the Legislature.
The court’s reading of this new “credentialing language” follows from the Supreme Judicial Court’s explanation in Carr for other elements of section 205(b)’s text. For example, the Court noted that “the Legislature inserted ‘incident reports required to be furnished to the board of registration in medicine’ as a specific example of records that are ‘necessary to’ comply with risk management programs and necessary to the work product of peer review committees." Carr, 426 Mass. at 522, quoting G.L.c. Ill, §205(b). Grammatically, credentialing information is another example of material “necessary to comply with risk management and quality assurance programs!,]” but the recent amendment, again, has a special modifier; the “physician credentialing verification service operated by a society or organization of medical professionals” must also collect the information for the specific purpose of turning it over to health care entities, not for its own purposes. G.L.c. Ill, §205(b). In addition, Harvard cannot be only a “physician credentialing verification service” in the health care industry when, as already stated, Harvard clearly has its own reasons for collecting this information. G.L.c. Ill, §205(b). Hence, the court cannot agree with the Hospital’s interpretation of the recent amendment.
The court’s holding gains further support from the Supreme Court’s central point in Carr that “(t]he Legislature used the "which are necessary" formulation in Section 205(b) to “narrow the scope” of the medical peer review privilege. Carr, 426 Mass. at 518, quoting G.L.c. 111, §205(b). From this point, two corollaries emerge. First, the last sentence of section 205(b) “clarifies that the Legislature assumed that some incident reports generated by a hospital are not necessary to comply with the board’s regulations.” Carr, 426 Mass. at 522; see also id. at 525 n. 11, 531 n.20. Likewise, section 205(b)’s new “credentialing language” reinforces the idea that not all materials and information ultimately provided to a facility’s peer review committees are necessarily protected by this statutory privilege. These two principles also underscore the importance of the language in G.L.c. 111, §§204(b), (c) and 205(b), respectively, that requires the court to account for what information and materials may have come from “original sources” or from sources “independent of the proceedings of the committee’s proceedings” or from those “independent of risk management and quality assurance programs established by the board of registration in medicine. ” See Carr, 426 Mass. at 522 n.7; Beth Israel Hosp. Ass'n v. Board of Reg. in Med., 401 Mass. 172, 183 (1987) (interpreting G.L.c. 111, §204(b), (c)). Discovery and use of these materials and information may not be privileged. Here, Harvard is clearly not a part of the Hospital, despite the ties between those institutions, and drawing this line makes for a sensible distinction in their relationship, both in this case and in their differing positions in the health care industry. For all of these reasons, then, the court must ALLOW Pardo’s motion to compel, and DENY the Hospital’s motion for a protective order, filed in opposition.
ORDER
For the foregoing reasons, the court hereby ALLOWS Pardo’s motion to compel and DENIES the Hospital’s motion for a protective order, submitted in opposition.