Lauriat, J.
Viatcheslav Abramian (“Abramian”) brought this action against defendant, the President and Fellows of Harvard College (“Harvard”), alleging that he had been discharged from the Harvard Guard Service because of his Russian national origin, and in retaliation for his complaints concerning national origin discrimination. Abramian has further alleged that defendants Paul E. Johnson, Robert J. Dowling and Thomas Henaghan (“the Individual Defendants”) aided and abetted the discriminatory conduct directed at him and interfered with his contractual relations with Harvard.
In June 1997, Abramian prevailed at a Superior Court trial on all his claims.* On appeal, the Supreme Judicial Court affirmed the judgment on his retaliation claim against Harvard, but vacated the judgment in all other respects and remanded the case to this court for further proceedings. The matter is currently before this court on the parties’ discovery-related motions filed prior to the start of the second trial. Abramian seeks court authorization to interview two former co-workers on an ex parte basis, and an order requiring production of documents underlying a report on discrimination at Harvard that was prepared by Choate, Hall & Stewart, a law firm engaged by Harvard. Harvard seeks a protective order that would prohibit Abramian from making any ex parte contact with Harvard’s current or former employees. It also opposes production of any documents related to the Choate, Hall & Stewart report.
BACKGROUND
In late 1992, Harvard noted a marked increase in discrimination complaints by members of its Guard Service. Apparently concerned by this course of events and the attendant publicity, Harvard retained the law firm of Choate, Hall & Stewart (“Choate”) in December 1992, to *231 look into the circumstances surrounding the discrimination complaints. At the time Harvard hired Choate, four guards, including Abramian, had complaints pending before the Massachusetts Commission Against Discrimination (“MCAD”) or the Equal Employment Opportunity Commission (“EEOC”). Harvard discharged Abramian from the Guard Service in February 1993.
Between February and June 1993, Choate conducted an investigation that included interviews and reviews of the personnel files of current and former guards (including Abramian) and supervisors, as well as the written record generated by the discrimination complaints. Choate’s investigation was conducted by attorneys A. Hugh Scott and Karen Cartotto and by investigator James Ring (“Ring”). On July 30, 1993, the investigation culminated in the release of a report (“the Ring Report”) which concluded that all the complaints of discrimination within the Guard Service were unfounded.
Undeterred by the Ring Report’s conclusion, Abramian brought this present action in October 1993. During the first trial of this action, Abramian’s Guard Service coworkers, Steven McCombe (“McCombe") and Howard Reid (“Reid”), testified at length that they had observed discriminatory acts while employed at the Guard Service. Neither McCombe nor Reid ever held a managerial position at the Guard Service. Both men have allegedly now told Abramian that they wish to speak with Abramian’s attorneys about other instances of discriminatory conduct at the Guard Service. Abramian’s attorneys have therefore requested the court’s authorization to interview McCombe and Reid, and possibly other current or former Harvard employees, on an ex parte basis, to obtain their information and determine its applicability to Abramian’s claims. Harvard contends that these individuals are Harvard’s agents and therefore already represented by its attorneys. As such, they should not be interviewed outside the presence of Harvard’s attorneys. In addition, Harvard is concerned that any statements that its current or former employees may make will be construed as admissions by Harvard.
Abramian also seeks to compel Harvard to now produce (1) all personnel data regarding hiring, discipline and discharge actions within the Guard Service that was reviewed for the Ring Report; (2) all notes of interviews compiled by Choate in the course of its investigation; (3) all preliminary drafts of the Ring Report; and (4) all documents and communications between Choate and anyone at Harvard. Harvard has responded with a privilege log listing fifteen items that may be responsive to one or more of these requests. Included among these items are “Interview summaries of 49 Harvard employees," and “Investigative summaries of 9 Harvard employees.” In addition to contending that these are not “notes of interviews,” Harvard claims that these items are protected from discoveiy by reason of the attorney work product doctrine. Harvard asserts the attorney-client privilege alone for two letters between Choate and Harvard’s in-house counsel, and combined privilege and immunity claims for all of the remaining items in its privilege log. In addition, Harvard has recently located a preliminaiy draft of the Ring Report for which it also asserts all possible privileges.
DISCUSSION
I.
“Where a person, as a client or prospective client, consults a member of the bar in his capacity as such, the communication in confidence of matters that are or that the client reasonably supposes to be necessary to the proper conduct of legal business is privileged at the option of the client.” National Employment Service Corp. v. Liberty Mutual Insurance Company, 3 Mass. L. Rptr. 221 (Mass. Super. Ct. December 12, 1994) (Welch, J.). The term “client” can include an agent or employee of the client. Id. The United States Supreme Court has extended the attorney-client privilege to the communications of a corporation’s employees when those communications are within the employee’s corporate duties, were sought in order to provide legal advice, and were considered confidential when made and kept confidential by the corporation thereafter. Upjohn v. United States, 449 U.S. 383, 394-95 (1981). Upjohn assumes an identity of interests between the corporation and its employees. City of Boston v. Labor Relations Commission, 51 Mass.App.Ct. 1115 (2001). The principles of Upjohn are inapplicable when employees take a position adversarial to the corporation or where that identity of interest is lacking. Id. Finally, the burden is upon the party asserting the privilege to demonstrate that it is applicable. Commerce and Industry Insurance Co. v. E.I. du Pont de Nemours and Co., 12 Mass.L.Rptr. 574 (Mass. Super. Ct. December 11, 2000) (van Gestel, J.).
Abramian asserts that the requested materials are not subject to the attorney-client privilege because Harvard did not hire Choate as an attorney, and Harvard’s employees were not imparting confidential information because they knew the final report would be made public.
Choate’s retention letter to Harvard stated that Harvard had hired Choate “as legal counsel to Harvard University in connection with the investigation of certain employment related matters and legal advice with respect to certain personnel issues concerning the Security Guard unit of the University’s Police Department.” These terms suggest that both Choate and Harvard saw a distinction between the investigation and any legal advice that the investigation might engender. Choate, although clearly not compelled to do so, kept the investigation of those employment related matters in-house. In fulfilling the investigative function in this manner, Choate was acting as an investigator rather than as an attorney. The investigative function is limited to the collection of factual data. However, Choate’s employment by Harvard was not limited to investigation. Therefore, the court must determine, on the evidence presented, which of the *232 allegedly privileged documents relate to Choate’s investigatory function and which are those as to which Choate acted as Harvard’s attorney.
The memoranda and notes accompanying “personnel data” and “financial data” fall outside the attorney-client privilege to the extent that they summarize, record and transmit that information. In addition, transmissions to and from Ring are not subject to the attorney-client privilege because Ring’s only function was as an investigator.
With respect to communications between Harvard’s in-house counsel and attorney A. Hugh Scott at Choate, it can be fairly concluded that these documents reflect Choate’s role of offering a legal assessment of the investigatoiy findings. Additionally, the court concludes that Harvard’s communication with co-defendant Paul Johnson, head of the Guard Service, made on December 28, 1992, falls within the attorney-client privilege under the principles articulated in Upjohn, and because Abramian has not argued that Johnson and Harvard had divergent interests in this matter.
Therefore, the court concludes that the attorney-client privilege is applicable only to the following items listed in Harvard’s privilege log: the December 28, 1992 memo from Margaret H. Marshall, Esq. to Paul E. Johnson; the July 8, 1993 letter from Margaret H. Marshall, Esq. to A. Hugh Scott, Esq.; and the billing file compiled between January and August 1993 sent by A. Hugh Scott, Esq. to Margaret H. Marshall, Esq.
The court need only consider the non-confldential nature of requested materials with respect to the draft version of the Ring Report. The attorney-client privilege is inapplicable to information intended for public release. See Peters v. Wallach, 366 Mass. 622, 627 (1975). There is no dispute that Harvard always intended to make the Ring Report available to the public. Draft versions would also contain materials intended for the public. Therefore, this document fails the test of confidentiality necessary to invoke the attorney-client privilege.
II.
Harvard may still prevent discovery of many of its allegedly privileged documents if those documents can be classified as attorney work product. The work product doctrine in Massachusetts is codified in Mass.R.Civ.P. 26(b)(3):
Subject to the provisions of subdivision (b)(4) of this rule, a parly may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or for the other party’s representative (including his attorney, consultant, surety, indemnitor, or agent) only upon a showing that the party seeking the discoveiy has substantial need of the materials in preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against the disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.
The initial question is whether the materials Abramian seeks to discover were “prepared in anticipation of litigation.” “The burden is upon the party resisting discovery to demonstrate that the materials sought are indeed work product within the scope of Rule 26(b)(3).” Cameron v. Norfolk & Dedham Fire Insurance Co., Inc., C.A. No. 98-1419-B (Mass. Super. Ct. September 8, 2000) (Doerfer, J.), citing Colonial Gas Company v. Aetna Casualty & Surety Company, 144 F.R.D. 600, 605 (D.Mass 1992). The existence of the mere possibility of litigation is insufficient to invoke the doctrine. See City of Worcester v. HCA Management Co., Inc., 839 F.Sup. 86, 88 (D.Mass. 1993). However, “the work product privilege applies to documents created in anticipation of litigation other than the litigation in which the documents are sought.” A.W. Chesterton v. Allstate Insurance Co., C.A. No. 96-4871, 24 Mass. L. Rptr. 550 (Mass. Super. Ct. January 22, 2001) (McHugh, J.). The determinative question is whether the prospect of litigation “was the primary motivating purpose behind the creation of a particular document.” Meszar v. Horan, C.A. No. 99-0788-B, 10 Mass. L. Rptr. 682 (Mass. Super. Ct. November 16, 1999) (Toomey, J.), citing City of Worcester v. HCA Management Co., Inc. 839 F.Sup. at 88.
A.
On the facts of this case, Harvard experienced an upsurge in discrimination complaints. Several of these were lodged with state and federal agencies. This state of affairs could lead to a number of motives ranging from prudent management to concern for employees’ civil liberties. The filing of an MCAD complaint serves at least two purposes. “First, it is meant to provide the agency Wth an opportunity to investigate and conciliate the claim of discrimination. Second, the filing requirement provides notice to the defendant of a potential suit.” Carter v. Commissioner of Correction, 43 Mass.App.Ct. 212, 218 (1997), citing Conroy v. Boston Edison Co., 758 F.Sup. 54, 57 (D.Mass. 1991). This second purpose lifts the prospect of litigation out of the speculative realm and provides the required nexus between Choate’s efforts and the production of related work product.
In assessing Harvard’s primary motivation, the court can only conclude that Harvard sought to serve many purposes in hiring Choate. Some of those purposes were undoubtedly extraneous to the legal advice it expected to receive. The court, with a single exception, cannot at this distance conclude that any single motivation was more important than another. Having had notice of suit, Harvard was in a position to seek legal counsel and was entitled to all the protections afforded any citizen of the Commonwealth in such circumstances. Similarly, Harvard’s attorneys were *233 entitled to prepare to defend Harvard’s interests in the manner they thought best within the scope of any anticipated litigation. The work product doctrine exists to protect the interests of both the attorney and client in precisely this manner. See Hickman v. Taylor, 329 U.S. 495, 510-11 (1947). The court will not invalidate the protections afforded to attorney work product absent a stronger showing that Harvard was motivated to hire Choate for some extra-legal purpose.
The single exception to this conclusion is the draft Ring Report. Because the final report was always intended for public release, preliminary versions do not contain materials whose primary purposes consisted of formulating a legal response to a potential suit. Therefore, none of the policy rationales underlying the work product doctrine apply to the draft Ring Report. However, with this single exception of the Ring report, Harvard has cleared the first hurdle required to apply the work product doctrine to the other requested documents, because it was on notice of a potential discrimination suit of sufficient specificity and sought legal advice as a result of that notice.
B.
Abramian may still gain access to the documents he seeks upon a demonstration that they are substantially necessary to his case and any deprivation would subject him to undue hardship in bringing that case. Mass.R.Civ.P. 26(b)(3). In order to discover the requested documents on this basis, Abramian must “convince the court that the materials sought encompass, in a wholly unique unduplicatable manner, the information sought.” Harris v. Steinberg, C.A. No. 93-1373-G, 6 Mass. L. Rptr. 417 (Mass. Super. Ct. February 10, 1997) (Doerfer, J.). Abramian contends that he has met this standard in the circumstances of this case because Harvard created interview and investigative summaries of numerous Harvard employees on the issues of Harvard’s alleged discriminatory practices. The materials contained in these documents are unique and “unduplicatable” because they were made in 1992 when facts and circumstances were fresh in the minds of those interviewed, some of whom are no longer available to Abramian. “Where a witness is unavailable or where contemporaneous statements have been made that cannot be reproduced, courts will often order the production of work product.” Harris v. Steinberg, supra.
Harvard counters that the summaries are not investigative notes of interviews, but are rather precisely the type of materials protected in Harris v. Steinberg, supra. The distinction between the summaries sought in this case and the investigative memoranda sought in Harris lies in the fact that the Harris materials consisted of compilations of materials from a number of sources. Here the summaries are affiliated with distinct employees. That they are not called “notes” is unavailing. The summaries list potential witnesses who may or may not have relevant information preserved in a manner that Abramian can no longer duplicate by any means. Harvard may chose to call any of the interviewees at trial. Should it do so, Abramian would be deprived of important impeachment material in addition to any relevant substantive information that they may possess. Thus, Abramian has met his burden to demonstrate that these materials are substantially necessary to the proper preparation of his case and are unavailable by other means.
Abramian has not made a similar showing with respect to the other documents listed on the privilege log. Harvard contends, and Abramian does not dispute, that they consist of documents that merely transmit or summarize the contents of personnel data and files already disclosed during discovery. Abramian is free to make what he can of the underlying materials without suffering any deprivation if the balance of those related materials are not produced.
Finally, as the court is required to “protect against the mental impressions, conclusions, opinions or legal theories” in materials subject to disclosure under Mass.R.Civ.P. 26 (b)(3), Harvard may redact any portions of the summaries containing such materials. Accordingly, Harvard may withhold discovery of all materials on its privilege log for which it invokes the protection of the work product doctrine except the “Interview Summaries of 49 Harvard employees” and the “Investigative Summaries of 9 Harvard employees,” as to which it shall produce redacted versions. In addition, the work product doctrine is inapplicable to the draft Ring Report and Harvard must produce it.
III.
Abramian’s second motion seeks permission to contact and interview ex parte Harvard’s current or former employees, specifically McCombe and Reid. Harvard’s cross motion for a protective order seeks to prevent such ex parte contacts. Harvard objects to allowing ex parte contact because, as its employees or agents, anything McCombe and/or Reid may say can be construed as an admission by Harvard. In addition, Harvard contends that such contacts are prohibited by the requirements of Rule 4.2 of the Massachusetts Rules of Professional Conduct.
Rule 4.2 of the Massachusetts Rules of Professional Conduct, .(effective January 1, 1998), provides, in pertinent part:
[i]n representing a client, a lawyer shall not communicate about the subject matter of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has consent of the other lawyer or is authorized to do so.
Comment 4 to the Rule addresses the Rule’s effect on the relationship between a corporation and its employees.
In the case of an organization, this Rule prohibits communications by a lawyer for another person or *234 entity concerning the matter in representation with persons having managerial responsibility on behalf of the organization with regard to the subject matter of the representation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statements may constitute an admission on the part of the organization . . .
Harvard’s current employees arguably fit within the latter two categories. Recent decisions have extended the reach of this Rule to former as well as current employees, Patriarca v. Center for Living and Working, C.A. No. 99-0689, 11 Mass. L. Rptr. 629 (Mass. Super. Ct. May 24, 2000) (Fecteau, J.), Stanford v. President and Fellows of Harvard College, C.A. No. 99-4042, 15 Mass. L. Rptr. 360 (Mass. Super. Ct. November 1, 2000) (Cratsley, J.), while earlier decisions, partially in reliance on the Rule’s earlier incarnation as DR 7-104(A)(1), decline to extend the reach of the Rule that far. See e.g., Siguel v. Trustees of Tufts College, 1990 WL 29199 (D.Mass.) 3.
In a proper case, there is clear authority that the court can authorize the ex parte contact Abramian seeks if the party requests advance authorization. In order to determine whether this is the type of case in which such contacts are appropriate “the court must analyze the interests and needs of all the parties, given the facts and circumstances of the case at hand.” Pardo v. General Hospital Corporation, C.A. No. 982714, 12 Mass. L. Rptr. 459 (Mass. Super. Ct. October 31, 2000) (Gershengorn, J.), citing Kaveney v. Murphy, 97 F.Sup.2d 88, 94-96 (D.Mass. 2000).
The principal fact and circumstance this case presents is its character as an employment discrimination matter. “Employment cases, especially discrimination claims, present the most compelling case for the court’s authorization of ex parte contact between plaintiffs counsel and the defendant’s employees.” Kaveney, 97 F.Sup.2d at 90. This is true because much, perhaps even most, of the relevant evidence will be in the defendant’s hands, including the hands of its current and former employees. Because of the potential monopoly of relevant evidence, employment discrimination cases offer challenges that would, if not ameliorated, essentially frustrate the policy reasons that allow victims of employment discrimination to bring such claims in the first place.
Nor is the plaintiffs recourse to depositions and other discovery devices sufficient to overcome the hurdles employment discrimination cases present. “Formal discoveiy is no substitute ... for the opportunity to speak to witnesses, whether favorable or not, outside of opposing counsel’s presence.” Pardo v. General Hospital Corporation, supra.
In analyzing the interests applicable to the defendant, Harvard has remedies to address whatever transpires from the ex parte contacts requested here. It is true that such contacts may elicit vicarious admissions by those employees. Ruszcyk v. Secretary of Public Safety, 401 Mass. 418, 420 (1988). The Court in Ruszcyk extended the ability to make such admissions from those with actual authority to make such statements to any statement made by an entity’s agent or servant within the scope of his employment. Id. However, the adoption of those principles “will not automatically result in the admissibility of vicarious admissions of questionable reliability. Rather, this approach will simply remove vicarious admissions from the blanket interdiction of the hearsay rule. Instead, discretion is vested in the judge to determine whether the probative value of the evidence is substantially outweighed by its potential for unjust prejudice to the opponent of its admissibility.” Id. at 422.
Moreover, Harvard’s contention that its employees will make statements that may constitute evidentiary admissions on the part of Harvard can be addressed by a requirement that Abramian stipulate in advance of each interview that (1) any act or omission by these persons in connection with this matter may not be imputed to Harvard for purposes of civil liability, and (2) any statements that they may make will not constitute an evidentiary admission on the part of Harvard. See Phillips-Farr v. Commonwealth, C.A. No. 98-2218-F, 13 Mass. R. Rptr. 727 (Mass. Super. Ct. November 16, 2001 Gants, J.), 2001 WL 1455945 3. Abramian may only interview McCombe and/or Reid if he files such a stipulation in writing with the court and counsel for the defendants. The court expresses no view at the present time concerning whether Abramian may contact any of Harvard’s current or former employees other than McCombe and Reid. Nor does it decide whether any information imparted to Abramian by either individual will be admissible at trial on any basis apart from being evidentiary admissions against Harvard. Should Abramian seek additional ex parte interviews, he must once again seek permission from the court in advance.
ORDER
For the forgoing reasons, Plaintiffs Motion to Compel is ALLOWED with respect to the draft version of the Ring Report, and redacted versions of the “Interview Summaries of 49 Harvard employees” and “Investigative Summaries of 9 Harvard employees” listed in Harvard’s privilege log, and DENIED in all other respects; and Plaintiffs Motion For Leave To Contact And Interview Ex Parte Current And Former Employees Of Harvard College In Preparation For Trial is ALLOWED as to Steven McCombe and Howard Reid, and DENIED without prejudice as to any other current and former employee of Harvard College. Defendant President and Fellows of Harvard College’s Cross Motion For A Protective Order is DENIED.