Leibensperger, Edward P., J.
INTRODUCTION
This case arises out of a construction incident in which Defendants Riley Brothers, Inc. (Riley) and Dunaff Construction, Inc. (Dunaff) struck a two-inch water service pipe while performing excavation work in Winthrop Square in Boston. The incident is alleged to have caused damage to an underground steam system owned by fourth-party Defendant Veolia Energy Boston, Inc. f/k/a Trigen-Boston Energy Corporation (Trigen). Plaintiff Ace American Insurance Co. (Ace) initiated the current subrogation action against Riley and Dunaff to recoup payments made to Trigen and asserted negligence claims against Riley and Dunaff. This matter is before the court on Riley’s Motion for Protective Order seeking to protect from disclosure and use a certain three-page memorandum and accompanying diagram that Riley claims is protected by the attorney-client privilege and the work product doctrine. Plaintiff Ace and third-party Defendant National Grid Services, LLC f/k/a Keyspan Corporate Services, LLC (National Grid) filed oppositions to the motion. For the reasons stated below, Riley’s Motion for Protective Order is DENIED in part, and ALLOWED in part.
BACKGROUND
The following facts are taken from the complaint and the exhibits submitted in conjunction with Riley’s Motion for Protective Order. On the evening of May 8, 2007, Riley and Dunaff were performing excavation work for National Grid on Otis Street in Boston. Riley and/or Dunaff workers utilized a backhoe to perform the excavation work. Sometime between 7:00 p.m. and *117 9:00 p.m., the backhoe struck and ruptured a two-inch water service line that provided service to one of the buildings on or adjacent to Otis Street. Trigen alleged that the rupture of the water line caused substantial damage to its underground steam distribution system. Trigen provided Riley with notice of Trigen’s intent to file suit against Riley for damages connected with the incident on October 1, 2007. Ace, Trigen’s insurer, made payments to Trigen in response to Trigen’s claim for some of the expenses incurred in connection with this incident in the amount of $1,832,780. Ace then filed suit to recoup the payments it made to Trigen, alleging negligence on the part of Riley and Dunaff. Specifically, Ace alleges that Riley and Dunaff were negligent in failing to properly mark the water pipes and in using a backhoe to perform the excavation instead of a shovel or other non-mechanical means. Thereafter, Dunaff filed a third-party complaint against National Grid for contribution and indemnification, and Riley filed a third-party complaint against Johnson Controls, Inc. (JCI) for contribution and indemnification.
I. The Challenged Document
In response to receiving a complaint in a different subrogation action (the Federal Insurance Company action)[3] relating to the same incident, Riley sent its insurance broker, Fredericks and Gerardi Insurance Agency (Fredericks & Gerardi), a seventeen-page fax that contained documents relating to the incident. See National Grid Opp. Ex. 1. In response to a subpoena issued during the course of discovery, Fredericks & Gerardi produced this seventeen-page fax, which included a three-page memorandum and accompanying diagram describing the incident that occurred on May 8, 2007 (the “Memorandum”). See Riley’s Motion for Protective Order Ex. A. Because the Memorandum has, by virtue of Fredericks & Gerardi’s production, been disclosed, Riley’s motion seeks protection from any further disclosure and use in the litigation and trial of this matter, of the Memorandum.
The Memorandum describes the incident that occurred on May 8, 2007 in Winthrop Square that is at the center of this litigation. A diagram of the work site is also attached to the Memorandum. The Memorandum is addressed to “Riley Brothers Attorney for Purpose of Legal Assistance” and the subject line states “Damaged Water Service on Winthrop Square, Boston, and resulting litigation.” The Memorandum is not signed and not dated, but the fax line indicates that it was sent on April 24, 2008. The origin of the Memorandum is described in Riley’s memorandum in support of its Motion for Protective Order as being a document created and sent by Riley’s former in-house counsel, Sara Turner. Those facts, however, are unsupported by affidavit.
The first page and the first paragraph on the second page of the Memorandum describe the factual circumstances surrounding the May 8, 2007, incident and Riley’s remedial efforts to slow the leak. The Memorandum states that one Riley supervisor, Mr. William Eddy, knew the area to be “very congested” and “suggested that Paul [owner of Dunaff) take extra precautions to hand dig, as opposed to using the backhoe” because Mr. Eddy “was concerned that there was not enough space to dig with the backhoe without catching one of the utility lines." This statement is alleged to be inconsistent with Mr. Eddy’s subsequent deposition testimony. See Ace Opp. Ex. 2 at pp. 53-54. The Memorandum also notes that “although the water main was marked there were no markings for the water service which Paul [owner of Dunaff] damaged.” The latter half of the Memorandum explicitly mentions the Federal Insurance Company claim, and the possibility of a future suit by Trigen, and discusses legal strategies relating to the claims.
In response to discovery requests in this action, Riley did not produce any documents providing a description of the incident. Riley’s failure to produce any document is particularly noteworthy because Mr. Eddy testified that he completed, and turned in to Riley, a three-page incident report regarding the May 8, 2007, events, which included a diagram of the work site. See National Grid Opp. Ex. 5 at pp. 83-88. Riley also failed to disclose the existence of the Memorandum. See Ace Opp. Ex. 1 (Riley answering “not applicable” to interrogatory question asking it to identify all withheld documents).
DISCUSSION
I. Attorney-Client Privilege
Riley argues that the Memorandum is protected by the attorney-client privilege because it was prepared by Riley’s in-house counsel upon receiving a copy of a summons in the Federal Insurance Company action. Riley claims that the Memorandum was sent to its insurance broker to be passed to its insurance carrier and then to its insurer-appointed attorney, and argues that such a communication should not be construed as a waiver of privilege. In their opposition memoranda, Ace and National Grid argue that the Memorandum is not protected by the attorney-client privilege because it was not communicated to an attorney for the purpose of obtaining legal advice, but to Riley’s insurance broker in an attempt to seek coverage on a claim. Alternatively, the opposing parties argue that any attorney-client protection that could apply was waived when Riley sent the Memorandum to its insurance broker.
A. Standard
The classic formulation of the attorney-client privilege is as follows: “(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the privilege be waived.” See Comm’r of Revenue v. *118 Comcast Corp., 453 Mass. 293, 303 (2009) (endorsing the classic formulation). The party asserting the privilege bears the burden of establishing the privilege, which includes proving that (1) the communications were sent by or received from a client during the course of the client’s search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived. Id. at 304 (citing In the Matter of the Reorganization of Elec. Mutual Liability Ins. Co., Ltd. (Bermuda), 425 Mass. 419, 421 (1997) (EMLICO)).
In this case, the Memorandum was unsigned and undated, and the origin of the Memorandum is not supported by an affidavit as required by Superior Court Rule 9A.[4] Thus, Riley fails to cany its burden of showing that the document is privileged. In any event, however, the court finds that any protection provided by the attorney-client privilege was waived when Riley disclosed the Memorandum to its insurance broker.
B. Waiver of Attorney-Client Privilege by Disclosure to Third Party
Disclosing privileged attorney-client communications to a third party generally undermines the privilege. See Comcast, 453 Mass. at 306 (disclosure to third party generally undermines the privilege); EMLICO, 425 Mass. at 421 (privilege is strictly construed). However, under the derivative attorney-client privilege,[5] the privilege extends to communications with agents of attorneys who are “necessary to secure and facilitate the communication between attorney and client.” Comcast, 453 Mass. at 306. The courts have narrowly interpreted the concept of derivative privilege. Id. at 308. The “necessity” element means more than just useful and convenient; the involvement of the third party “must be nearly indispensible or serve some specialized purpose in facilitating the attorney-client communications.” Id. at 307 (quoting Cavallaro v. United States, 284 F.3d 236, 249 (1st Cir. 2002)). The privilege applies “only to communications in which the third party plays an interpretive role." Banco do Brasil, S.A. v. 275 Washington Street Corp., 2012 WL 1247756 at *8 (D.Mass. 2012) (quoting Dahl v. Bain Capital Partners, 714 F.Sup.2d 225, 228 (D.Mass. 2010)). The privilege has been held not to apply even when the communication “significantly assisted the attorney in giving his client legal advice.” Comcast, 453 Mass. at 309 (quoting United States v. Ackert, 169 F.3d 136, 139 (2nd Cir. 1999)).
In this case, Riley’s disclosure of the Memorandum to its insurance broker waived any attorney-client protection that may have applied because the communication to the insurance broker was not necessary for Riley to facilitate communications with its attorney. See Comcast, 453 Mass. at 306 (derivative privilege does not apply unless the communication is made “for the purpose of [the client] obtaining legal advice from the lawyer”) (internal quotations omitted); Rhodes v. AIG Domestic Claims, Inc., 20 Mass. L. Rptr. 491, 499 (Mass.Super. 2006) (holding that defendant’s disclosure of otherwise privileged information to defendant’s insurance broker waived the privilege); Pasteris v. Robillard, 121 F.R.D. 18, 21-22 (D.Mass. 1988) (finding that, under Massachusetts law, privilege cannot be invoked where statements at issue were given by the insured to the insurer, with the intention that the statements would be passed on to insured’s insurer-assigned counsel, because there was no evidence that the employee of the insurance company to whom the statements were communicated was a subordinate of an attorney or acting as an attorney). Here, as in Rhodes, Riley fails to establish that its insurance broker “was retained by any defense attorney or necessary to facilitate attorney client communications.” 20 Mass. L. Rptr. at 499. Accordingly, “any otherwise privileged communication that was copied to [the insurance broker] must be disclosed to the plaintiffs because the privilege has been waived.” Id.
II. Work Product
Riley also argues that the Memorandum is protected by the work product doctrine because it was prepared in anticipation of litigation. Although undated, Riley claims that the Memorandum was drafted after Riley was notified about the Federal Insurance Company action. Riley argues that the Memorandum contains Riley’s mental impressions and opinions of the litigation and should be protected from disclosure. On its face, the Memorandum references the Federal Insurance Company litigation and appears to be an internally prepared report in connection with that lawsuit.
A. Standard
The work product doctrine protects documents and tangible things that are prepared by a party or a party’s representative in anticipation of litigation. See generally Hickman v. Taylor, 329 U.S. 495 (1947); Mass.R.Civ.P. 26(b)(3).[6] A document is prepared “in anticipation of litigation” it the documents were prepared “because of’ existing or expecting litigation. See Comcast, 453 Mass. at 316-17 (adopting the “because of’ test and rejecting the “primarily to assist in litigation” test). There are two general categories of work product: (1) fact or ordinary work product, and (2) opinion work product. See Comcast, 453 Mass. at 314. Fact work product refers to documents that discuss the underlying factual scenarios, while opinion work product refers to documents that contain “the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party.” Id. (internal citations omitted).
Courts have distinguished between reports that are prepared “because of’ litigation, which are entitled to work product protection, and reports that are prepared in the insurer’s ordinary course of business, which are not. See e.g., Rhodes, 20 Mass. L. Rptr. at *119 494 (holding that factual reports of investigation, and an insurer’s evaluation of those reports contained in a claims files, are prepared in the ordinary line of business and duty until litigation has been threatened). In Comcast, the Supreme Judicial Court determined that the “because of’ test should be applied to “documents that, although prepared because of expected litigation, are intended to inform a business decision influenced by the prospects of litigation.” 453 Mass. at 316. The controlling question is whether, “in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared because of the prospect of litigation.” Id. at 317 (quoting United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)).
Here, there can be no question that the Memorandum was prepared “because of’ litigation. The Memorandum was prepared by Riley (perhaps by its in-house counsel) after Riley was served with a summons. See Rhodes, 20 Mass L. Rptr. at 494 (factual reports of investigation and an insurer’s evaluation of such facts are not protected as work product until litigation has been threatened or commenced (emphasis added)); Johnson v. Bertonazzi, 2012 WL 1994696 at *2 (Mass.Super. 2012) [29 Mass. L. Rptr. 618] (Defendant’s statement to insurer eight days after accident protected by work product doctrine). The first page and first paragraph on the second page of the Memorandum constitute fact work product because those sections describe the factual circumstances surrounding the incident that is at the heart of the litigation. The remaining portions of the Memorandum discuss legal theories and strategies relating to the claim, and constitute opinion work product.
The opposing parties do not dispute that the Memorandum qualifies as work product, but argue that Riley waived its work product protection when it sent the document to an unnecessary party — Riley’s insurance broker. Ace and National Grid further argue that, even if Riley did not waive its work product protection, the court should order disclosure because the parties have a substantial need for the Memorandum and cannot obtain its substantial equivalent from any other source.
B. Waiver of Work Product
As a general rule, work product is more difficult to waive than attorney-client privilege. See United States v. Massachusetts Institute of Technology, 129 F.3d 681, 687 (1st Cir. 1997) (“by contrast [to the attorney-client privilege], work product protection is provided against ‘adversaries,’ so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection”). Work product protection is waived when the party asserting the protection discloses the communication to an unnecessary parly who may be a potential adversary. Id. at 687 (finding defendant’s disclosure of work product to an audit agency a disclosure to a potential adversary). Riley’s disclosure of the Memorandum to its insurance broker, with the apparent purpose of directing the Memorandum to counsel assigned by the insurer, did not waive the work product protection.
C. Substantial Need and Substantial Equivalent
Work product protection, in contrast to attorney-client privilege, is qualified protection. See United States v. Massachusetts Institute of Technology, 129 F.3d at 687 (work product protection can be overcome by a sufficient showing of need). Work product, not otherwise waived, may be disclosed if the party seeking disclosure can demonstrate that he (1) has a substantial need for the document, and (2) cannot obtain the substantial equivalent of the document without undue hardship. Comcast, 453 Mass. at 315; Mass.R.Civ.P. 26(b)(3). To meet this standard, the party seeking disclosure must “convince the court that the materials sought encompass, in a wholly unique unduplicatable manner, the information sought.” Abramian v. President & Fellows of Harvard College, 14 Mass. L. Rptr. 230, 233 (Mass.Super. 2002). Opinion work product is not discoverable absent extremely unusual circumstances. See Mass.R.Civ.P. 26(b)(3) (requiring the court to protect from disclosure “the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation”); see also Comcast, 453 Mass. at 314-15 (discussing the “heightened” standard for allowing discovery of opinion work product, but declining to determine whether it is “absolute”). Fact work product, on the other hand, is afforded lesser protection than opinion work product. Comcast, 453 Mass. at 315; Rhodes, 20 Mass. L. Rptr. at 493 (“[f]act work product is protected from disclosure, but to a lesser degree than opinion work product”); Schoenstein v. Schilling, 26 Mass. L. Rptr. 54, 55 (Mass.Super. 2009) (distinguishing between work protect protection as to documents concerning legal strategies and analysis and documents recounting underlying evidence).
In this case, Ace and National Grid have demonstrated that they have a substantial need for the factual portion of the Memorandum and that they cannot obtain this information from other sources without undue hardship, if at all. The factual portion of the Memorandum contains Riley’s version of the facts surrounding the May 8 incident and is substantially equivalent to an internal incident report. See Abramian, 14 Mass. L. Rptr. at 233 (“where contemporaneous statements have been made that cannot be reproduced, courts will often order the production of work product”) (quoting Harris v. Steinberg, 6 Mass. L. Rptr. 417, 421 (1997)). The Memorandum contains certain statements that may be construed as an admission by Riley and, as such, are highly probative. The Memorandum also contradicts statements made by Riley Supervisor William Eddy during his deposition and may be useful for impeachment. See Abram *120 ian, 14 Mass. L. Rptr. at 233 (ordering disclosure of work product material where non-disclosure would deprive Plaintiff of important impeachment material and relevant substantive information).
Furthermore, the factual portion of the Memorandum is the substantial equivalent of a business record or internal accident report that would normally be discoverable. See Shotwell v. Winthrop Cmty. Hosp., 26 Mass.App.Ct. 1014, 1016 (1988) (hospital incident report was prepared in the ordinary course of business and not protected by work product doctrine). Because Riley has not produced any business records or accident reports relating to the incident, and.claims it is not in possession of any such reports, the parties have no other way of obtaining the factual information contained in the Memorandum. See Ward v. Peabody, 380 Mass. 805, 818 (1980) (discovery is appropriate where neither the documents at issue nor their substantial equivalents are available from another source); Abramian, 14 Mass. L. Rptr. at 233 (investigatory materials were “unduplicatable” because they were made when facts and circumstances were fresh in the minds of those interviewed); Rhodes, 20 Mass. L. Rptr. at 495 (ordering the disclosure of fact work product where plaintiff could not obtain the substantial equivalent from other sources in the context of an unfair settlement claim). Accordingly, the fact portion of the Memorandum is not protected by the work product doctrine.
The court concludes, however, that the opinion work product contained in the Memorandum, i.e., the second and third page of the Memorandum except for the first paragraph on the second page, is protected from further disclosure and use. While the opposing parties have demonstrated a substantial need for the factual portions of the Memorandum, they have not made the “highly persuasive” showing required to allow for disclosure of the legal theories and opinions presented therein. See Comcast, 453 Mass. at 315.
ORDER
For the foregoing reasons, Riley’s Motion for Protective Order is DENIED with respect to the first page and the first paragraph on the second page of the Memorandum, and the accompanying diagram, and Riley’s Motion for Protective Order is ALLOWED with respect to the second and third pages of the Memorandum, excepting the first paragraph on the second page.

 See Federal Ins. Co. v. Riley Brothers, Inc. et al., C.A. 08-10074 (D.Mass.). Plaintiff, as subrogee of A.W. Perry, Inc., brought suit against Riley and Thermal North American, Inc. for damages sustained to certain property owned by A.W. Perry at 77-89 Franklin Street in Boston that were allegedly caused by the same incident at issue here. See Riley Motion for Protective Order Ex. C.

 Superior Court Rule 9A(a)(4) provides: “In civil cases the court need not hear any motion, or opposition thereto, grounded on facts, unless the facts are verified by affidavit, or are apparent upon the record and files, or are agreed to and stated in writing signed by the attorneys for the parties interested.”

 The derivative attorney-client privilege is sometimes referred to as the Kovel doctrine. See United States v. Kovel, 296 F. 2d 918 (2nd Cir. 1961).

 Mass.R.Civ.P. 26(b)(3) provides, in pertinent part: “a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this mle and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning this litigation.”