# United States Court of Appeals
## For the First Circuit

No. 04-1576

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN BISANTI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Selya, Lynch, and Howard,
Circuit Judges.

Raipher D. Pellegrino, with whom Hope C. Button and Raipher D. Pellegrino Associates, P.C. were on brief, for appellant.
Ariane D. Vuono, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

July 8, 2005

**LYNCH**, **Circuit Judge**.    John Bisanti was found guilty, after a ten-day jury trial, of tax evasion for the years 1994 to 1998.  26 U.S.C. § 7201.  On February 4, 2004, he was sentenced to prison for 41 months, the minimum Guideline sentence under the then-mandatory federal Sentencing Guidelines.

He attacks his conviction based on claims of evidentiary error: that the district court erroneously 1) permitted the defendant's tax accountant, Paul Mancinone, who is also an attorney, to testify about matters within Bisanti's attorney-client privilege, and 2) excluded  evidence about Bisanti's incarceration during and acquittal of charges in Bisanti's prior federal prosecution for money laundering.

He attacks his sentence, arguing that he is entitled to a remand for resentencing under United States v. Booker, 125 S. Ct. 738 (2005).

None of Bisanti's arguments as to trial error has any merit.  However, we agree that his sentence should be remanded under Booker.

**I.**

At trial, the government alleged that Bisanti used several mechanisms to willfully avoid paying his taxes, such as selling his share of a chiropractic business and transferring the assets to various trusts and foreign bank accounts, purchasing an international bank and depositing the funds, and establishing an

investment account under an alias. He did this in order to hide the money, rather than paying it to the Internal Revenue Service (IRS). Bisanti's defense at trial was not that he had in fact paid his taxes; nor did he deny that he formed and funded various trusts and bank accounts and purchased an international bank. Bisanti characterized these latter two events as having an independent commercial justification; he argued that he never intended to conceal these assets from the government, but set up the trusts and the bank in order to "protect [his] assets." Bisanti's primary defense was that he intended to pay his taxes once he received a "final bill" from the IRS, and so he never made an <u>intentional</u> effort to avoid paying taxes. He argued that he was not in violation of the law as the statute only punishes "[a]ny person who <u>willfully</u> attempts in any manner to evade or defeat any tax" liability. 26 U.S.C. § 7201 (emphasis added). The jury, of course, concluded he did have such an intent.

Bisanti's tax troubles, leading to this prosecution, began in early 1998 when he received notice of an audit from the IRS for the 1994 and 1995 tax years. On February 24, 1998, Bisanti authorized Mancinone, who was both an accountant and an attorney, and who prepared Bisanti's tax returns for 1996 and 1997, to act as his representative to the IRS through the audit process. In 1999, the IRS expanded the audit to include the 1996 to 1998 tax years; Mancinone also represented Bisanti for those years. Mancinone's

negotiations with the IRS produced some corrections. On January 3, 2000, the IRS assessed Bisanti's corrected tax liability for 1994 and 1995, plus penalties, for a total of approximately $585,000. On April 17, 2000, and March 21, 2001, the IRS assessed Bisanti's liability for tax years 1996 and 1997, respectively, adding an additional $120,000 in taxes and penalties.

Bisanti never paid any of this $700,000-plus tax liability. A lien was placed on his property in Florida by the IRS in October 2000. He was indicted on the tax evasion charges on August 15, 2002; trial lasted from August 20, 2003, to September 4, 2003.

Part of the trial dealt with what came to be called the "Florida legal proceeding." This term was used to describe a federal investigation of Bisanti in Florida in 2000 to 2001, which resulted in Bisanti being charged and tried on a federal criminal charge of money laundering. He was ultimately acquitted on February 8, 2001. That case involved a sting operation resulting from a joint investigation of the FBI, IRS, and Miami-Dade Police Department, in which Bisanti attempted to sell a custom Ferrari racing car worth approximately $700,000 to an undercover officer who had represented to Bisanti that the money used to purchase the car was the proceeds of an international prostitution ring. After being arrested on the money laundering charge, Bisanti stated to Miami-Dade Police Detective Jay Huff that he owed more than a

-4-

million dollars to the IRS. Before that trial Bisanti spent about three months in federal prison, from late November 2000 to early February 2001.

**II**.

Claims of Trial Error

A.      Attorney-Client Privilege Claim

There is no common law accountant-client privilege,[1] so Bisanti's claim depends on his showing that Mancinone was acting as his attorney as to the statements admitted. See Cavallaro v. United States, 284 F.3d 236, 246 (1st Cir. 2002). The burden is on Bisanti, as the party claiming attorney-client privilege, to establish that the privilege exists and covers the statements at issue here. In re Keeper of Records, 348 F.3d 16, 22 (1st Cir. 2003).

Although the parties cite an early case in which this court said that the existence of the attorney-client privilege is a factual determination, see United States v. Wilson, 798 F.2d 509, 512 (1st Cir. 1986), that is not quite correct, as our later case law makes clear. We have since said that issues of privilege are subject to a three-part standard of review, depending on which

---

[1] Congress has passed a limited statutory accountant-client privilege. See 26 U.S.C. § 7525(a)(1). However, the privilege only extends to communications that would be privileged were they between a taxpayer and an attorney, id., and therefore would provide Bisanti no further protection than the attorney-client privilege he argues existed here. Neither party argues the issue of statutory privilege.

question is presented to us. "On an appeal respecting a privilege claim, the standard of review depends on the issue." Cavallaro, 284 F.3d at 245 (citing United States v. Mass. Inst. of Tech., 129 F.3d 681, 683 (1st Cir. 1987)). Factual determinations are reviewed for clear error, legal determinations are reviewed de novo, and evidentiary determinations are reviewed for abuse of discretion. Id.

The essential elements of the claim of attorney-client privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Id. (citations omitted).

The district court addressed the issue of privilege on two different occasions. The first was in a pre-trial hearing on Bisanti's motion in limine to preclude the government from calling Mancinone as a witness. The district court noted that it did not need to decide broadly whether Mancinone was acting as an accountant or an attorney, but rather would address privilege issues on a statement-specific basis. The court ruled that any statements made by Mancinone to the IRS were clearly outside any privilege, and that any statements made by Bisanti to Mancinone with the understanding that the information would be divulged to

-6-

the IRS were also clearly outside any privilege. The court also ruled that Mancinone could testify as to any information given to him by the IRS that he then passed on to Bisanti. The court did say, however, that any inculpatory statements attributed to Bisanti would be covered by the privilege and inadmissible.

The court revisited the issue of privilege again during Mancinone's testimony. Bisanti objected to two proffered questions the government intended to ask Mancinone, arguing that the answers would require disclosure of privileged information. No appeal is taken from the first question, which was whether Mancinone ever discussed with Bisanti his obligation to pay the taxes assessed as a result of the audit, and the consequences of not doing so. The court ruled that this was routine accountant-client communications, and not protected by the attorney-client privilege.

The sole testimony on which the claim of privilege is made on appeal concerns the government's questions to Mancinone as to whether Bisanti had ever asked Mancinone to enter into an "offer in compromise" with the IRS concerning payment of his tax obligations as calculated by the IRS. The court at conference asked the government to rephrase the question. As a result, the precise question asked was "did you discuss the possibility of an offer [in] compromise on behalf of John Bisanti with the revenue agent with whom you were dealing for the '94 and '95 tax years?" Mancinone responded that he had. The government then asked, "Did

you pursue an offer [in] compromise on behalf of John Bisanti for his tax liability for the 1994, 1995 tax years with any IRS representative?" Mancinone responded that he had not. The government then asked why he had not done so, and Maninone replied that he had not been authorized to do so by Bisanti.

Whether or not Mancinone acted on occasion as counsel (not as accountant), not all communications with counsel are privileged. Cavallaro, 236 U.S. at 245. "The rationale for the privilege is that safeguarding communications between attorney and client encourages disclosures by the client to the lawyer that facilitate the client's compliance with the law and better enable the client to present legitimate arguments should litigation arise." Id.

Neither of the first two questions relating to the offer in compromise asked about communications between Mancinone and Bisanti. Rather, they asked about Mancinone's communications with the IRS, and thus were clearly outside any privilege.

As to the third "why" question, which had the potential to elicit information about Bisanti's communications with Mancinone concerning authority to negotiate a tax matter, the district court found that this situation was characteristic of an accountant-client relationship, that the context did not show an attorney-client relationship, and so the answer was not privileged. This determination was clearly correct. Because we find there was no

error in the admission of the statement, we do not reach Bisanti's argument that the answer was somehow prejudicial to him.

B.      Refusal to Admit Evidence of Bisanti's Incarceration and Acquittal

We review the claim that the district court erroneously excluded evidence for abuse of discretion. United States v. Otero-Mendez, 273 F.3d 46, 53 (1st Cir. 2001). The district court was plainly correct.

The government introduced the testimony of Detective Jay Huff of the Miami-Dade Police Department, that during a post-arrest interview he had with Bisanti during the earlier federal money laundering investigation in Florida, Bisanti stated that he owed a million dollars to the IRS. There is no appeal from the denial of the motion in limine to preclude the government from introducing any statements Bisanti made during that investigation.

Bisanti argues that as a result of the district court's decision to admit this evidence, he should have been permitted to introduce testimony that he could not pay the government the taxes he owed because he was incarcerated during that earlier money laundering prosecution, of which charges he was eventually acquitted. Bisanti did put into evidence that a major asset of his -- a Ferrari automobile worth an estimated $700,000 -- had been confiscated by the government and was unavailable to him to pay his taxes. He was able to make his main point: that he had no intent

to evade payment of taxes -- he simply lacked the ability to pay what was owed.

Bisanti is being disingenuous when he argues on appeal that he was precluded from putting on evidence that he was incarcerated. He was given the opportunity to do so when he took the stand and declined, and there are obvious reasons that it was not in his interest to testify that he had been incarcerated on earlier federal criminal charges.

Before trial, the district court granted the government's motion in limine to preclude Bisanti from introducing evidence of his acquittal, but did not address any other aspects of the earlier investigation. The district court later specifically stated that its preclusive order was limited to Bisanti offering evidence of his acquittal. When Bisanti took the stand, the district court asked Bisanti's counsel how he intended to get into the money laundering prosecution, the arrest, and the incarceration. Bisanti's counsel said that he would refer to the entire event as the "Florida legal proceeding." There was no offer by Bisanti of any evidence that he was incarcerated, so he can hardly complain now.

Bisanti's last argument is that, given the admission of his statements made during the money laundering investigation, he was entitled to offer evidence that he was acquitted of the money laundering charge and that the district court abused its discretion

-10-

in refusing to allow him to do so. To the contrary, the fact of acquittal in a prior court proceeding involving similar subject matter is usually not admitted into evidence. See United States v. Marrero-Ortiz, 160 F.3d 768, 775 (1st Cir. 1998); see also United States v. Smith, 145 F.3d 458, 462 (1st Cir. 1998). That is because such acquittals are not generally probative of the defendant's innocence in the case at trial and the information has a tendency to confuse the jury rather than assist it. Marrero-Ortiz, 160 F.3d at 775. It is also potentially prejudicial to the government. Here the earlier money laundering charge on which there was an acquittal bears only a tangential relationship to the tax charges; even if the acquittal were probative of Bisanti's intent to evade taxes (and we think it is not), the district court struck the correct balance.

In an attempt to minimize the potential prejudice to both sides, the court instructed the jury that the statements made by Bisanti were during "a legal proceeding brought by the United States government," that the "details of the Florida legal proceeding . . . were complex and not directly relevant to the . . . case now before you," and that the proceeding "did not result in any criminal conviction or finding of civil liability against John Bisanti." There was no abuse of discretion in excluding the evidence and no trial error.

-11-

Booker Sentencing Claim

Acknowledging that he did not raise a claim of <u>Booker</u> error in the trial court, Bisanti argues that he has established a reasonable probability that but for the error he would have received a more lenient sentence had the Guidelines not been mandatory. <u>See</u> <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005). He relies on statements by the trial judge at sentencing, particularly:

> COURT: I mean, I will agree with you [defense counsel], and I'll just say parenthetically I have never had in many ways such a sad case. Mr. Bisanti was taken advantage of by practically everybody who made an effort to take advantage of him. . . . It's almost Grecian in the level of tragedy of somebody who had it all right in his hands. . . . So yes, I agree with you, he fell into the hands of bad people who ripped him off beyond belief, and gave him bad advice.
> . . .
> A judge cannot depart downward because he feels bad for a defendant or feels bad for a family, and if I did, I think what I've heard from the defendant's family would certainly touch me. It does touch me. Obviously he's much beloved and respected and many people have felt his kindness.
> . . .
> I just hope that you understand this is Federal Court. These are the federal sentencing guidelines. They're tough. . . . It's a tough, tough arena we're in right now, and the rules are very, very strict.

The court also noted that Bisanti, who had no other criminal convictions, had voluntarily returned to the United States

from Italy in order to face these tax charges, despite objections from his family.

The court considered Bisanti's two requests for downward departure but concluded that there was no available "species of downward departure . . . that is recognized" under the then-mandatory Guidelines. The suggested basis for the downward departures were diminished mental capacity and family circumstances. The court correctly rejected both, but commented "I'm making this decision because I believe that's what the law requires me to do." Indeed, the court noted that if it had granted a downward departure, "that decision would be corrected by the Court of Appeals." In accepting the government's recommendation of the 41-month sentence, the court characterized it "to be the very lowest sentence that I can impose under these circumstances."

We have said that whether a Booker remand is warranted is not dependent on how vocal the district court is. Antonakopoulos, 399 F.3d at 81. Rather, our rule is that where the district court has stated that it might well have given a different sentence had its hands not been tied by the Guidelines, that information is highly pertinent. Id. Notwithstanding the government's opposition to a remand, the district court made its view perfectly plain on this point and there is no reason not to listen.

Bisanti has satisfied his burden of showing a reasonable probability of a more lenient sentence and is entitled to a remand

for resentencing.  We intimate no view as to the sentence to be imposed on remand.  <u>See</u> <u>United States</u> v. <u>Mercado Irizarry</u>, 404 F.3d 497, 503 (1st Cir. 2005).

Accordingly, we **<u>affirm</u>** Bisanti's conviction, **<u>vacate</u>** his sentence, and **<u>remand</u>** to the district court for resentencing.