Gants, Ralph D., J.
The defendant, Deloitte & Touche LLP (“Deloitte”), has moved this Court for an order compelling the plaintiff, Bank of America (“B of A”), and a non-party, Evergreen Collateral Consulting (“Evergreen”), to produce in discovery documents that had been previously produced by Evergreen to the United States Securities and Exchange Commission (“SEC") in response to a subpoena. After hearing, Deloitte’s motion to compel is ALLOWED.
*187 BACKGROUND
Evergreen, a small commercial finance examination firm, had been retained in 2002 by B of A’s predecessor in interest (Fleet National Bank, N.A. (“Fleet”)) to review the books and records of DVI Financial Services, Inc. (“DVIFS”), to whom Fleet, as agent for a syndicate of banks, had lent many millions of dollars. Evergreen’s focus in its review was to test the collateral pledged to the syndicate by DVIFS, which comprised the Borrowing Base for the loans. Evergreen prepared reports regarding its review in January and November 2002.
After DVIFS unsuccessfully attempted to file its Form 10-Q for March 31, 2003 without Deloitte’s certification and Deloitte’s resignation as the auditor for DVIFS’s corporate parent, Fleet retained outside counsel, Attorney Jonathan Bernstein (“Bernstein”) of the law firm of Bingham McCutchen, to analyze Fleet’s position regarding the collectability of this loan. B of A asserts that Bernstein’s retention was in anticipation of litigation. Bernstein attests that, beginning in early July 2003, Evergreen performed work for the purpose of assisting him in what was essentially an internal investigation of the syndicate’s loan to DVIFS. Consequently, B of A refused to produce in discovery Evergreen’s September 5, 2003 report and related work papers regarding Evergreen’s examination of DVIFS, claiming that these documents were protected under the work product doctrine. This claim of privilege was challenged by Deloitte, who moved to compel before Judge Allan van Gestel. In an Order dated October 10, 2007, Judge van Gestel refused to conduct an in camera inspection of the documents at issue and denied Deloitte’s motion to compel production of these documents, with the proviso that B of A “may not utilize any of the documents withheld in the trial of this case or in support of any motion or request in this case, nor may it present witnesses to testify about the contents of the documents withheld.”
Judge van Gestel, however, did not address one fact that had first been presented in a footnote to B of A’s opposition to the motion to compel — Evergreen on or about February 11, 2005 had produced its September 5, 2003 report to the SEC in response to an SEC subpoena that had issued on December 13, 2004. In producing that report (and related documents), Evergreen’s attorney (who jointly represented both Evergreen and Fleet) had proffered general objections, but did not withhold any of the subpoenaed documents, even though the SEC subpoena specifically recognized that documents may be withheld from production on the basis of a claim of attorney-client privilege or attorney work product protection as long as a privilege log was provided identifying the withheld documents and the reason they were withheld. De-loitte now contends that, since Evergreen, with B of A’s blessing, had provided the September 5, 2003 report to the SEC without specific objection or court order, B of A has waived any rights it may have had under the work product doctrine to withhold that report and related work papers from discovery in the instant action.
DISCUSSION
The work product doctrine, while often discussed as an appendage of the attorney-client privilege, is actually separate and distinct from it. The attorney-client privilege “is designed to protect confidentiality, so that any disclosure outside the magic circle is inconsistent with the privilege.” United States v. Massachusetts Institute of Technology (MIT), 129 F.3d 681, 687 (1st Cir. 1997). The work product doctrine, however, is designed to protect work product from disclosure to “adversaries,” so “only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection.” Id. See also Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1428 (3rd Cir. 1991) (“the purpose of the work-product doctrine requires us to distinguish between disclosures to adversaries and disclosures to non-adversaries”). As the United States Court of Appeals for the District of Columbia Circuit explained in United States v. Amer. Tel. & Tel Co. (AT&T):
[T]he work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney’s trial preparations from the discovery attempts of the opponent. The purpose of the work product privilege is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation ... A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents should be allowed without waiver of the privilege.
642 F.2d 1285, 1299 (D.C. Cir. 1980).
As the case law has evolved, in determining whether an attorney has waived the protection of the work product doctrine by disclosing work product, a court must determine not only whether the disclosure was made directly to an adversary but also whether the disclosure substantially increased the possibility that an adversary may gain access to the information disclosed. GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46, 51 (S.D.N.Y. 1979) (noting that the “substantially increases” standard is the “rule accepted by the majority of courts”), citing 8 Wright & Miller, Federal Practice and Procedure §2024 at 210 (1970). See also Stix Products, Inc. v. United Merchants & Mfgrs., Inc., 47 F.R.D. 334, 338 (S.D.N.Y.1969). As articulated by the federal district court in GAF Corp.:
Disclosure of the privileged information by the party asserting the attorney work product privilege to a third party does not constitute waiver unless such disclosure, under the circumstances, is inconsis *188 tent with the maintenance of secrecy from the disclosing party’s adversaiy. Therefore, only if such disclosure substantially increases the possibility that an opposing party could obtain the information disclosed will the disclosing party’s work product privilege be deemed waived.
85 F.R.D. at 52 (internal citations omitted).
Therefore, to determine whether the disclosure of Evergreen’s September 5, 2003 report to the SEC constituted a waiver of the work product doctrine as to that report, this Court must answer two questions:
1. Was the SEC an “adversary” of B of A at the time of the disclosure?
2. If not, did this disclosure substantially increase the possibility that an adversaiy may gain access to this report?
If the answer is “yes” as to either question, the disclosure waives the work product doctrine as to that document.
Turning to the first question, this Court finds that the SEC was not an adversaiy of B of A with respect to the disclosure of the Evergreen report. At that time, the SEC, along with the United States Attorney for the Eastern District of Pennsylvania, the Federal Bureau of Investigation, and the United States Postal Inspection Service, was investigating allegations of fraud by DVIFS, its corporate parent (DVI, Inc.), and their officers. B of A was one of the alleged victims of the fraud; there was no indication that B of A had committed any wrongdoing or was in any way the focus of the SEC investigation. If the United States Attorney succeeded in winning a criminal conviction against DVI, DVIFS, or its officers, or if the SEC succeeded in obtaining a civil adjudication or settlement, B of A may have benefitted either by obtaining full or partial restitution of its loan loss or, if B of A were to file suit, by preventing through collateral estoppel an adjudicated defendant from contesting earlier-established factual findings.
Turning to the second question — whether the disclosure substantially increased the possibility that an adversaiy may gain access to this report — this Court first looks to whether B of A and the SEC, expressly or implicitly, had entered into a joint prosecution agreement (more commonly characterized as a joint defense agreement when the parties are defendants or potential defendants) under the common interest doctrine. See Hanover Ins. Co. v. Rapo & Jepsen Ins. Services, Inc., 449 Mass. 609, 612-13 (2007) (“Courts have applied the [common interest doctrine] to shared work product”), citing Haines v. Liggett Group, Inc., 975 F.2d 81, 94 (3d Cir. 1992); In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990) (“the [common interest] rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine”); and United States ex rel. Burroughs v. De Nardi Corp., 167 F.R.D. 680, 685-86 (S.D.Cal. 1996). If they did, then the disclosure to a party within the joint prosecution (or joint defense) team would not substantially increase the possibility that an adversaiy may gain access to the report, because the law effectively treats such a disclosure no differently than disclosure to another attorney within the same firm to allow “persons who share a common interest in litigation [to] be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.” In re Grand Jury Subpoenas, 902 F.2d at 249.
There is no evidence that the SEC and B of A entered into a joint prosecution agreement as to DVIFS. Nor would any such agreement generally have been appropriate for the SEC to enter into since its responsibilities are to serve the public interest, not the interest of any private party, even if that party is a victim. In United States v. MIT, when the Internal Revenue Service sought work product documents that MIT had previously disclosed to the Defense Contract Audit Agency, the auditing arm of the Department of Defense, MIT responded to the IRS’s claim of waiver by arguing that it shared a common interest with the Audit Agency and therefore had not waived its rights under the work product doctrine. 129 F.3d at 684. The First Circuit found that no common interest between MIT and the Audit Agency existed, stating that MITs disclosure “did not take place in the context of a joint litigation where the parties shared a common legal interest." Id..at 687. Applying this standard to the action at bar, while B of A and the SEC were not adversaries, they did not share a “common legal interest,” as there existed no joint litigation between the SEC and B of A. Therefore, the common interest doctrine does not protect B of A’s disclosure to the SEC.
Since the disclosure to the SEC was not protected by the common interest doctrine, this Court must now determine whether, without that protection, the disclosure to the SEC substantially increased the possibility that potential adversaries may obtain the disclosed information. This Court finds that it did. The SEC subpoena to the B of A enclosed SEC Form 1662, which specifically included a list of the Routine Uses of Information. In the preface to the that list, the Form declared:
The Commission often makes its files available to other government agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.
SEC Form 1662 at 3. In short, Form 1662 made clear that when, as here, there is a criminal fraud investigation being conducted contemporaneously with the SEC investigation, the SEC would likely provide rele *189 vant information to the United States Attorney and the appropriate criminal investigative agency without seeking B of A’s permission. If that were to happen, and the criminal investigation were to ripen into an indictment, the United States Attorney has various obligations — constitutional, statutory, and common law — to disclose information to the indicted party, which here would likely be DVIFS, DVI, or one of fts officers, each of whom would be B of A’s adversaries. Consequently, when B of A produced the Evergreen report to the SEC, it substantially increased the possibility that the report would be provided to the United States Attorney or the FBI , which substantially increased the possibility that the report would be produced in discovery to DVIFS, DVI, or one of its officers.
The SEC here reported to the Court that it did not produce these documents to any third parties. In determining the issue of waiver, though, the focus is not retrospective (whether the disclosed documents ultimately were disclosed to an adversary) but prospective (whether, at the time of the disclosure, the disclosure substantially increased the possibility of disclosure). Here, at the time of the disclosure of the Evergreen report, B of A knew or should have known that its disclosure substantially increased the possibility that the report would be disclosed to DVI, DVIFS, or its officers. At that time, B of A could not reasonably have foreseen that the only person to be indicted in the DVIFS investigation would be DVI’s Chief Financial Officer, who would ultimately waive indictment and plead guilty upon the filing of a criminal information to one count of mail fraud and one count of falsely certifying a financial report.
The federal district court in GAF Corp. applied this same principle, albeit to quite different facts that dictated a different result. GAF Corp. v. Eastman Kodak Co., 85 F.R.D. at 46. In that case, GAF sought a declaration from the court that its compliance with the government’s. Civil Investigative Demands (“CIDs”) would not waive GAF’s work product protection as to Kodak, its adversary in an antitrust litigation. Id. at 49. The court granted GAF’s motion for a protective order, finding that GAF’s disclosure to the government would remain protected by the work product doctrine because the Antitrust Civil Process Act, 15 U.S.C. §1313(c)(3), specifically barred the government from revealing the contents of any GAF memorandum to the opposing party without GAF’s consent. Id. at 52. Given this limitation, the court found that GAF’s disclosure to the government would not substantially increase the risk that Kodak would obtain the information. Id. at 52. Similarly, in United States v. Textron, Inc., and Subsidiaries, the federal district court held that the disclosure of work product to an independent auditor “did not substantially increase the likelihood” that the work product would be disclosed to an adversary because the auditor was not a potential adversary, was not working on behalf of a potential adversary, and the auditor agreed to treat the work product as confidential. 507 F.Sup.2d 138, 154 (D.R.I. 2007).
Here, there was no statutory bar preventing the SEC from disclosing the Evergreen report without B of A’s consent. Rather, the SEC in Form 1662 specifically warned B of A that it might disclose subpoenaed records to other government agencies without B of A’s knowledge or consent. Nor did the SEC ever agree to treat the Evergreen report as confidential. To be sure, B of A’s attorney, in his letter dated August 16, 2004 to the SEC, stated that the documents produced in response to the subpoena were “intended for the SEC’s attorneys’ and staffs eyes only.” However, the SEC never agreed to this limitation. Nor did it do anything suggesting that it had agreed to a limitation that would effectively supersede the warnings in Form 1662 regarding the Routine Use of Information. A declaration by the producing party that it wishes the information to be limited to the SEC’s “eyes only” is a far ciy from an agreement to such an extraordinary restriction by the SEC.
ORDER
For the reasons detailed above, Deloitte’s motion to compel the plaintiff B of A and non-party Evergreen to produce in discovery documents that had been previously produced by Evergreen to the SEC in response to a subpoena is ALLOWED. These documents shall be produced no later than June 27, 2008.