Kaplan, Mitchell H., J.
This action arises out of a dispute between the plaintiff, Dr. Rachid Och (“Dr. Och”), and the defendant, Dr. Peter Moran (“Dr. Moran”), who jointly own and operate Prescott Health Center LLP (“PHC”) and two other affiliated entities (set out in footnote 1). The matter is before the court on Dr. Moran’s motion to compel the production of documents containing email communications between (1) Dr. Och and PHC’s corporate counsel, John Grandfield (“Attorney Grandfield”), and (2) Dr. Och and two accountants, Michael Carlson (“Carlson”) and Peter Kerr (“Kerr”), who practice with the firm Jacobs, Velella & Kerr, P.C., and provided accounting services to PHC. Dr. Och contends that the documents are protected from disclosure by the attorney-client privilege and the work product doctrine. After an in-camera review of the documents, and for the reasons explained below, the motion is ALLOWED in part and DENIED in part.
For purposes of clarifying this memorandum and order, the court has individually numbered the documents that are the subject of this motion — 1 through 57. Documents 1 through 39 contain emails printed from Attorney Grandfield’s email database generated during the time period May 4, 2007 through July 18, 2008. Documents 40 through 57 consist of emails printed from Kerr’s database, dated December 28, 2007 through October 26, 2008. Both sets of documents have been organized in chronological order.[2]
Documents 1 through 37 consist of email communications with Attorney Grandfield written on or before January 6, 2008. The court concludes that these documents are protected by the attorney-client privilege. The text of these emails makes it evident that, during this time period, Attorney Grandfield was providing Dr. Och with personal legal advice concerning the disposition of assets owned by PHC or its affiliates and the possible buyout of Dr. Moran’s interests, and that Dr. Moran was being represented by separate counsel with respect to these matters, Attorney Jean Sifleet. It is also apparent that these counsel were negotiating with one another on behalf of Drs. Och and Moran, respectively. At Dr. Och’s deposition, one of his attorneys, Roy Bourgeois, characterized this time period as a “short gray period” in which Attorney Grandfield advised Dr. Och personally before directing him to obtain separate counsel.[3] It is clear that Dr. Och understood Grandfield to be acting as his personal representative with respect to these matters and had a justified expectation that his communications with Grandfield would be kept confidential. Moreover, Dr. Moran had independent representation with respect to these negotiations, and his attorney certainly could have advised Grandfield that he was disqualified from acting for Dr. Och, if she thought that was necessary to protect Dr. Moran’s interests. See Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 305 (2009) (for the attorney client privilege to attach “the communication must be made in confidence— that is, with the expectation that the communication will not be divulged”). While Attorney Grandfield’s failure to obtain an express waiver from Dr. Moran before acting on behalf of Dr. Och in matters relating to PHC and its affiliates, in which Dr. Moran’s and Dr. Och’s interests were clearly not aligned, may have been inconsistent with his obligations under the Rules of Professional Conduct, his failure in this regard ought not prevent Dr. Och from relying on the confidentiality of the communications under these circumstances. To rule otherwise would be unfair to Dr. Och.
As to document 38, however, no attorney-client privilege attaches. This correspondence with Attorney Grandfield occurred within a month of the date this litigation commenced. The so-called gray period was clearly over at this time. In addition, these documents were not generated “for the purpose of facilitating the rendition of legal services.” Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 115 (1997).
With respect to document 39, this correspondence contains the mental impressions of Dr. Och’s litigation counsel prepared in the course of this litigation and is thus protected work product material. Hickman v. Taylor, 329 U.S. 495 (1947); Mass.R.Civ.P. 26(b)(3). These documents are the functional equivalent of an interview by Dr. Och’s litigation counsel of a third-party witness, Attorney Grandfield. Such material generally will not be subject to discovery unless there is a showing of substantial need, which Dr. Moran has not established.
The email communications between Dr. Och and accountants Kerr and Carlson numbered 40 through 53, do not fall within the “derivative attorney-client privilege” recognized in Comcast Corp., 453 Mass. at 306-07. The accounting advice sought from Kerr and Carlson was not “ ‘necessary’ for the ‘effective consultation’ between attorney and client.” Comcast Corp., 453 Mass. at 307, quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961). Indeed, there is no indication in the documents that litigation counsel is asking for the information disclosed in these emails and that it could only be generated by accounting experts. In fact, the court has substantial doubt that litigation counsel would have retained the accounting firm that had been advising PHC and its affiliates on business matters for a number of years, now to advise on matters adverse to one of the two principals in PHC, who was also the adverse party in potentially impending litigation. There is also no indication that the accountants understood that they were being asked to provide professional services in a manner that would cause them to be adverse to Dr. Moran. Moreover, even if these documents met the standard *16 in Comcast, the court also has substantial doubt that Kerr and Carlson could withhold partnership related communications from a member of the partnership.
Finally, as to documents 54 through 57, the communications will be protected as the work product of Dr. Och’s litigation counsel. It is apparent that in these emails Dr. Och was forwarding clearly privileged communications from his litigation counsel to the accountants. Although there is certainly a substantial argument that Dr. Och waived the privilege by forwarding his counsel’s emails to Carlson and Kerr, the court declines to order these documents produced. Dr. Och likely did not understand the potential consequences of his actions, and he would be unfairly prejudiced if these documents were disclosed. See United States v. Massachusetts Inst. of Tech., 129 F.3d 681, 687 (1st. Cir. 1997) (“work product protection is provided against ‘adversaries,’ so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection”). Principles of equity suggest that it is appropriate to withhold from production documents that go to litigation strategy and not undisclosed, disputed facts.

ORDER

For the foregoing reasons, it is hereby ORDERED that documents numbered 1-37, 39, and 54-57 be protected from disclosure under the attorney-client privilege and the work product doctrine. It is further ORDERED that documents numbered 38 and 40-53 be produced to Dr. Moran.

 Document 53 is the only document which has been numbered out of chronological order.

 Attorney Bourgeois’s assertion that the gray period was “short,” seems a bit strained, as the documents span over 8 months of communications.