JUSTICE RICE,
dissenting.
¶38 We recognized in In re Rules that “information may be shared without loss of the privilege’” to parties who were outside the attorney-client relationship but nonetheless “within the ‘magic circle’ or community of interest” by virtue of shared legal interests. In re Rules of Prof'l Conduct, 2000 MT 110, ¶¶ 60, 70, 299 Mont. 321, 2 P.3d 806 (citation omitted). I believe the Court has understated the interests shared by American Zurich and Roscoe. I would hold that these parties have the necessary “community of interest” which permitted information to be shared in this matter without loss of the privilege. In re Rules, ¶ 70.
¶39 Although acknowledging that the parties share some general interests as employer and insurer, the Court concludes that Roscoe’s role in the matter is “similar to that of a witness” in which Roscoe is “called upon to provide background information to Zurich about the employee’s duties, history and facts about the injury.” Opinion, ¶ 15. The Court’s reasoning is premised upon the statutes which provide that the employer is not to be named as a party in an action for benefits, and that, under Plan II, the insurer is primarily liable to the *312 employee. Opinion, ¶ 12. However, the fact that the employer is not the named party and the insurer holds exclusive authority to adjust a claim should not end the inquiry concerning their shared interests. As we explained in In re Rules, “ the underlying concern is functional: that the lawyer be able to consult with others needed in the representation and that the client be allowed to bring closely related persons who are appropriate, even if not vital, to a consultation.’” In re Rules, ¶ 60 (emphasis added) (quoting U.S. v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997)). After considering the function of the relationship, I would conclude that Roscoe’s role is significantly greater than that of a witness.
¶40 In Householder v. Republic Indem. Co. of Cal., 2001 MTWCC 61, 2001 MT Wrk. Comp. LEXIS 82, the Workers’ Compensation Court addressed a discovery dispute involving a claimant’s attorney who contacted the employer directly to obtain information. While noting the distinctions between a workers’ compensation case and other liability cases, the Workers’ Compensation Court held that significant legal interests were nonetheless shared by the employer and the insurer. Householder, ¶ 9. Although employers are no longer named in workers’ compensation cases, the Workers’ Compensation Court’s discussion of shared interests, even when the insurer is the liable party, is instructive:
[W]hile a workers’ compensation insurer is directly liable to the claimant, the employer’s interests are affected .... At minimum, the employer is required to cooperate with the insurer in the litigation. The employer’s interests will often dovetail with those of the insurer since its premiums may be affected by its loss experience.
Householder, ¶ 9. We noted this “dovetailing” of interests in the context of liability insurers at issue in In re Rules as well. See In re Rules, ¶ 37 (quoting Kent D. Syverud, What Professional Responsibility Scholars Should Know About Insurance, 4 Conn. Ins. L.J. 17, 23-24 (1997)) (“[b]oth insurance companies and insureds have important and meaningful stakes in the outcome [of] a lawsuit against the insureds, stakes that include not just the money that the insurance company must pay in defense and settlement, but also the uninsured liabilities of the insured, which include not just any judgment in excess of liability limits, but also the insured’s reputation and other non-economic stakes’”).
¶41 An employer has no authority to influence the adjustment of a claim, see Hernandez v. Nat’l Union Fire Ins. Co. of Pittsburgh, 2003 *313 MTWCC 5, ¶ 1, 2003 MT Wrk. Comp. LEXIS 4, but as recognized in Householder, the employer must still actively cooperate with the insurer in the defense of the claim. Householder, ¶ 9. The insurance contract between Zurich and Roscoe not only required Roscoe to provide Zurich with documentation, the names and addresses of witnesses, and “other information [Zurich] may need,” but also required Roscoe to “[c]ooperate with [Zurich] and assist [Zurich], as [Zurich] may request, in the investigation, settlement or defense of any claim, proceeding or suit.” (Emphasis added.) This duty is consistent with the administrative rule imposing upon Roscoe a “duty to cooperate and assist” Zurich. Admin. R. M. 24.5.301(4). Thus, while Zurich held the ultimate authority for adjusting or defending the claim, Roscoe was nonetheless bound by rule and by contract to provide assistance to Zurich on the claim, from beginning to end, including the investigation phase, the settlement phase and, if necessary, the trial phase, in which it was obligated to assist Zurich in establishing a defense to the claim. This simply makes common sense, as an employer could possess a wealth of resources for the insurer, not the least of which may be expertise concerning the mechanism or causation of an accident, a potential liability issue. I thus disagree with the District Court’s reasoning that Roscoe’s legal obligations in Peters’ workers compensation case ceased after Zurich accepted liability over the claim.”
¶42 Further, the employer will rightly be concerned about the future, particularly the potential for future liability exposure which may well be dependent upon the outcome of the claim. This concern is inherent within our legal system, which relies upon case precedent to establish liability in future cases. While this concern does not take away the ultimate responsibility for the claim from the insurer, it nonetheless is a legal concern also shared by the insurer, who must consider the precedent that may be created by way of a settlement or judgment, which in turn, may affect the viability of future claims and the underwriting which may be necessary for those claims. Even though the employer may exert no influence on the claim, the insurer’s actions will potentially affect both the insurer and the employer, and that possibility will provide incentive for the employer to assist the insurer to the best of the employer’s ability. The District Court reasoned that ‘Roscoe did not need to understand the legal analysis or legal implications of Peters’ claim,” but I disagree that such ignorance is or should be the order of the day.
*314 ¶43 Here, there were additional future liability concerns held by Zurich and Roscoe. During the pendency of his claim for workers’ compensation benefits, Peters threatened to initiate further litigation against both Zurich and Roscoe on multiple occasions. In its discussion of factual background, Maynard’s letter mentions this very possibility, stating that Peters “was clearly shopping his Sherner claim against Roscoe Steel.”[1] Peters ultimately commenced this bad faith action against Zurich. Regardless of the ultimate litigation decisions Peters made, the fact remains that both Zurich and Roscoe were made aware of potential future litigation and both held an interest in resolving Peters’ workers’ compensation claim in a way which would not unnecessarily expose them to increased future liability. These interests are similar to those we identified in the liability context in In re Rules when we noted that “the uninsured liabilities of the insured’” was a shared interest of the insurer and insured. In re Rules, ¶ 37 (citation omitted). We should encourage communication about such issues between the insurer and the employerwvho may then encourage a prompt and fair settlement so that future bad faith litigation can be avoided-as incentive for good claim resolutions.
¶44 The Court states broadly that “it was not necessary or appropriate for Zurich to communicate its settlement strategy with Roscoe.” Opinion, ¶ 16. However, while Roscoe had no authority to influence Zurich’s litigation strategy, that should not bar Zurich from soliciting Roscoe’s expertise in order to form the strategy. Indeed, it is by that very process of communication-fche insurer discussing with the employer what options may be available to the insurer for adjusting or defending the claim, depending upon the information which is available-whereby the employer can be educated about the legal issues and better understand the nature of the information the insurer is seeking, so that it may fully satisfy its duties to support the insurer. It is unrealistic to think that communication between the insurer and employer can be reduced to a Webb-esque witness interview calling for “Just the facts, ma’am.” As the Court notes, the purpose of the privilege is to promote such ‘full and frank communication.” Opinion,
¶ 10. We should encourage such communication.
¶45 Nothing similar to these duties exists between the employer and the claimant. The Court notes that employers and employees also share common interests, and reasons that such interests align an *315 employer with employees in a manner similar to the employer’s alignment with the insurer. However, I believe this to be an unrealistic view of the litigation process, even within the workers’ compensation context. While the employer and employee surely have numerous shared interests, the precise question here is the shared interests and the shared obligations of the employer and insurer in resolving the pending litigation.
¶46 For these reasons, I believe that, under Montana law, Roscoe shared a “community of interest” with Zurich in the resolution of this claim. In re Rules, ¶ 70.1 would grant supervisory control and would reverse the District Court.

 The Maynard letter has been filed under seal, but will be disclosed as a result of the Court’s decision.